IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| SARAH LANIER, | )<br>) Case No.<br>) |
| Plaintiff, | ) Judge<br>) Magistrate Judge |
| v. | )<br>) Jury Demand |
| VANDERBILT UNIVERSITY, | )<br>)<br>)<br>) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Sarah Lanier, by and through her undersigned counsel, alleges the following claims against Vanderbilt University:

### I.   INTRODUCTION

1. This action seeks damages and other legal and equitable relief for Defendant Vanderbilt University's unlawful retaliation against Plaintiff in violation of the False Claims Act, 31 U.S.C. § 3730(h); the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304; and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

2. Plaintiff has filed a timely charge with the Equal Employment Opportunity Commission and reserves the right to amend to include claims under the Age Discrimination in Employment Act ("ADEA").

3. Ms. Lanier was a loyal and high-performing administrative employee of Vanderbilt University Police Department ("VUPD") for over 24 years. She was unlawfully terminated while on FMLA-protected leave, after reporting age-based harassment and raising concerns about unlawful employment practices.

1

4. Vanderbilt's actions were retaliatory, discriminatory, and in violation of federal and state law.

5. Ms. Lanier seeks all remedies available, including back pay, front pay, compensatory and punitive damages, and attorneys' fees.

II. **PARTIES**

6. Plaintiff Sarah Lanier is a citizen and resident of Davidson County, Tennessee and was employed by Defendant from March 31, 2001 until her unlawful termination in April 2025.

7. Defendant Vanderbilt University is a private research university located in Nashville, Tennessee, and operates the Vanderbilt University Police Department (VUPD), a fully commissioned law enforcement agency responsible for campus safety and Clery Act compliance.

III. **JURISDICTION AND VENUE**

8. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 as this case involves federal questions under the FMLA and the FCA. This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

9. Venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

IV. **FACTUAL ALLEGATIONS**

10. Ms. Lanier served with distinction in the VUPD for over two decades in various positions.

11. Ms. Lanier has served as a manager in the Records Unit since June of 2012.

12. A subordinate of Ms. Lanier's reported to her that Captain King was pressuring staff to improperly close cases in violation of established protocols. As the senior member of the Records Division, Ms. Lanier intervened and objected to King's request.

2

13. After her initial objection, Captain King became aggressively hostile towards Ms. Lanier. King instructed officers to change case-closing protocols in order to artificially inflate their case closure statistics.

14. Ms. Lanier consistently refused to participate in these unlawful practices, which would have resulted in the premature closure of cases and the falsification of official law enforcement data.

15. These requests violated both Vanderbilt University policy and applicable laws governing law enforcement integrity and public safety data reporting. Ms. Lanier made clear to Captain King that compliance would be unlawful.

16. Ms. Lanier reported Captain King's misconduct directly to Deputy Chief Tommye Sutton, alerting him that King had improperly closed cases and became aggressive and hostile when Ms. Lanier sent case closures back for corrections.

17. During this same period, Ms. Lanier also became aware that Captain King had used another officer's unique three-digit electronic signature—without that officer's knowledge or consent—to falsely close a case, in further violation of law and policy.

18. Deputy Chief Sutton stated he would speak with Captain King about the matter, but no formal investigation was initiated, and the pressure to manipulate case outcomes continued unabated.

19. On or about late May of 2024, Lanier first informed Chief Inspector Patrick Conwell—who oversees security technology and data integrity for VUPD—of the hostility in the records department. She would report this verbally at least three (3) times. On October 3, 2024, Ms. Lanier e-mailed Conwell about the illegal case closures advocated for by Captain King and, by this point, implicitly supported by Deputy Chief Sutton.

20. On or about October 18, 2024, rather than addressing the unlawful conduct she reported, Chief Inspector Conwell, Deputy Chief Sutton, and Teea Moore of Vanderbilt University Police Department Human Resources, abruptly removed Ms. Lanier from her role in the Records Division and placed her on leave pending an internal investigation into her own conduct.

21. On or about December 9, 2024, Vanderbilt initiated a sham investigation based on false complaints allegedly originating from the Records Department—complaints that appear to have been retaliatory in nature and timed closely with Ms. Lanier's protected disclosures.

22. Upon information and belief, Sutton and King have known each other since their early days as officers at Vanderbilt circa 2006.

23. Upon information and belief, Sutton was previously placed on leave and/or terminated for actions he took while at other universities.

24. Upon information and belief, Vanderbilt rehired Sutton in 2022 despite knowledge of his prior terminations.

25. On or around January of 2024, Ms. Lanier was instructed she would need to fill a vacancy in her department.

26. Ms. Lanier was given five candidates to interview and all were over-qualified, with the exception of one candidate, Amy Silva. Only three candidates showed up for the interviews in or around late June of 2024. After Ms. Silva's interview, Ms. Lanier asked VUPD HR Carmen Smithson to replace the two candidates who didn't show up and she agreed.

27. On July 1, 2024, Ms. Lanier saw Amy Silva at the department and asked Conwell why she was at Vanderbilt. He told me she was having a meeting with Sutton and that he, Conwell, would be giving her a private tour of the campus after their meeting. After this, Carmen called Ms. Lanier and congratulated Ms. Lanier on hiring Ms. Silva.

28. Ms. Lanier told Carmen she hadn't selected Ms. Silva and reminded her she was awaiting her to schedule the other two. After an awkward silence, Ms. Lanier said to Carmen, "well I guess she was picked for me."

29. Upon information and belief, the candidate that Ms. Lanier had rejected had been hired by Sutton to replace Ms. Lanier for her refusal to conduct illegal activities.

30. Part of the sham investigation involved a complaint made specifically by Silva against Ms. Lanier, which either was deliberately misrepresented or did not constitute any known policy violations or break any laws.

31. During the investigation, Ms. Lanier interviewed with Vanderbilt Equal Opportunity and Access Office.

32. Upon information and belief, both employee's complaints were a part of a sham investigation, an attempt at retaliating against Ms. Lanier to generate pretext to terminate her employment.

33. One of the employee's complaints was a complaint about racism and religious discrimination. Upon information and belief, the employee's complaint largely encompassed a scenario when the employee asked Ms. Lanier what Juneteenth was she said she had recently learned herself and that was part of the problem. Ms. Lanier is a Black woman. The employee also said Ms. Lanier had made religious comments toward her but Ms. Lanier and the employee grew up in the same church and faith. The complaint was not found to be credible by Vanderbilt.

34. The second employee's complaints allegedly surrounded a conversation in which the employee asked Ms. Lanier if another colleague was gay. Ms. Lanier responded that she didn't know if that colleague was gay and asked whether the employee was mixing that colleague up

5

with another colleague who was gay. Ms. Lanier never made any derogatory comments about homosexuality in that conversation.

35. Upon information and belief, VUPD apparently determined that single conversation, not even initiated by Ms. Lanier, constituted a "hostile work environment," even though Ms. Lanier never said a single derogatory word towards her colleagues.

36. Upon information and belief, neither of the complaints were made in good faith but in an attempt to oust Ms. Lanier so that she could be replaced with another employee who was willing to alter case statistics and closures.

37. An investigator for the Vanderbilt EOA office informed Ms. Lanier she should file a complaint about VUPD as they were clearly trying to push her out.

38. Without counsel, Ms. Lanier then filed a complaint that she was being pushed out due to her age.

39. Upon information and belief, Ms. Lanier also filed an inquiry with the Equal Employment Opportunity Commission reflecting the same.

40. On March 25, 2025, Ms. Lanier took FMLA-protected medical leave following surgery.

41. While on leave, Ms. Lanier was informed on April 24, 2025, that she must either resign or be terminated, effective immediately.

42. Vanderbilt's demand occurred while Ms. Lanier remained on FMLA-protected leave and was still recovering from surgery.

43. Vanderbilt personnel told Ms. Lanier she had only a few days to resign or sign a severance agreement, despite the fact that she was older than forty years old and entitled to at least twenty-one (21) days.

44. Ms. Lanier's direct supervisor and decision-makers were aware of her complaints regarding the records and protected leave. Nevertheless, the decision-makers acted swiftly to manufacture complaints against Ms. Lanier.

45. Vanderbilt failed to engage in any interactive process or provide any legitimate reason for her termination other than vague assertions of creating a hostile work environment unsupported by any legitimate investigation or complaint.

46. Upon information and belief, on May 6, 2025, Sutton made an announcement to VUPD, congratulating King on having a 40% case closure rate, stating that had never been done at VUPD before.

47. Upon information and belief, the closure rate "achievement" was achieved only because they had removed Ms. Lanier as the barrier for proper closures.

48. Ms. Lanier appeared to be the only person standing in the way of the falsified closure rate.

49. Ms. Lanier was terminated in retaliation for using FMLA leave and for reporting unlawful conduct in the workplace.

50. Defendant's conduct was willful and malicious and caused Ms. Lanier to suffer financial loss, emotional distress, and reputational harm.

V. CLAIMS FOR RELIEF

**COUNT I: RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT**
**(31 U.S.C. § 3730(h))**

51. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

52. At all relevant times, Plaintiff was employed by Defendant Vanderbilt University and served as a senior manager within the Vanderbilt University Police Department ("VUPD"), a fully commissioned law enforcement agency responsible for public safety and required to report campus crime statistics under the federal Clery Act.

53. During her employment, Plaintiff engaged in protected activity under the False Claims Act by repeatedly opposing and refusing to participate in unlawful conduct that would have resulted in the submission of false or fraudulent information to the federal government.

54. Specifically, Plaintiff objected to efforts by VUPD command staff—including Captain King and Deputy Chief Sutton—to falsify official case closure data by prematurely closing cases, misusing another officer's electronic signature, and otherwise manipulating law enforcement records in order to artificially inflate performance statistics.

55. These actions, if carried out, would have caused the University to submit materially false data in its Annual Security Reports as required under the Clery Act, which is a condition of receiving federal funds under the Higher Education Act.

56. Plaintiff reported these concerns internally to senior officials within VUPD, including Deputy Chief Tommye Sutton and Chief Inspector Patrick Conwell, and refused to carry out instructions that would have resulted in the submission of false law enforcement data to the federal government.

57. Plaintiff's actions constituted lawful efforts to stop one or more violations of the False Claims Act, as defined by 31 U.S.C. § 3730(h).

58. Defendant Vanderbilt University, through its agents and officers, knew or should have known of Plaintiff's protected activity.

59. Shortly thereafter, Plaintiff was subjected to escalating retaliation, including removal from her position, placement on administrative leave, a sham internal investigation, and ultimately termination.

60. Plaintiff was terminated in whole or in part because of her efforts to prevent Vanderbilt University from submitting false or fraudulent information to the federal government in violation of the False Claims Act.

61. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered lost wages and benefits, emotional distress, reputational harm, and other damages in an amount to be proven at trial.

62. Pursuant to 31 U.S.C. § 3730(h), Plaintiff is entitled to all relief necessary to make her whole, including reinstatement (or front pay in lieu thereof), double back pay, interest on lost wages, compensation for emotional distress, and litigation costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff requests all relief allowed under the FCA, including but not limited to front pay, back pay, compensatory damages, attorney's fees, costs and such further relief as deemed proper by this Court.

### COUNT II- VIOLATION OF TENNESSEE PUBLIC PROTECTION ACT
### (Tenn. Code Ann. § 50-1-304)

63. Plaintiff incorporates the preceding paragraphs as if fully stated herein.

64. At all times relevant to this Complaint, Plaintiff was an employee of Vanderbilt University, and Vanderbilt was her employer within the meaning of Tenn. Code Ann. § 50-1-304.

65. During her employment, Plaintiff was instructed and refused to participate in conduct that she reasonably believed to be unlawful, including but not limited to:

　　1. Engaging in prematurely closing cases;

　　2. Objecting to discriminatory or retaliatory treatment of other employees; and

　　3. Refusing to falsify or suppress evidence, data, and/or reports.

66. Plaintiff's refusal to participate in or remain silent about this unlawful conduct was a substantial factor in Vanderbilt's decision to terminate her employment.

67. Vanderbilt's termination of Plaintiff in retaliation for her refusal to engage in or remain silent about illegal activities constitutes a violation of the TPPA, Tenn. Code Ann. § 50-1-304.

68. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages and benefits, emotional distress, reputational damage, and other compensable injuries.

69. Plaintiff is entitled to all remedies available under the TPPA, including injunctive relief, front pay, compensatory damages, attorneys' fees, and costs.

WHEREFORE, Plaintiff requests all relief allowed under Tennessee law, including but not limited to front pay, back pay, compensatory damages, injunctive relief, attorney's fees, costs, and such further relief as deemed proper by this Court.

### COUNT III: FMLA INTERFERENCE AND RETALIATION

70. Plaintiff incorporates the preceding paragraphs as if fully stated herein.

71. Plaintiff engaged in protected activity by taking FMLA leave.

72. Defendant interfered with Plaintiff's rights under the FMLA and retaliated against her by terminating her employment during protected leave.

73. Defendant attempted to place Plaintiff on administrative leave while on protected FMLA leave.

74. Defendant's actions were willful.

WHEREFORE, Plaintiff requests all relief allowed under federal law, including but not limited to front pay, back pay, compensatory damages, liquidated damages, attorney's fees, costs, and such further relief as deemed proper by this Court.

### COUNT IV – TENNESSEE COMMON LAW RETALIATORY DISCHARGE

75. Plaintiff incorporates the preceding paragraphs as if fully stated herein.

76. Under Tennessee common law, an at-will employee may not be terminated in retaliation for refusing to participate in illegal or unethical conduct, or for acting in a manner that supports a clear public policy—such as reporting or opposing fraud, criminal misconduct, or violations of law.

77. During her employment with Vanderbilt University, Plaintiff became aware of conduct by supervisors and administrative staff that she reasonably believed to be unlawful and contrary to public policy, including but not limited to the premature closure and/or falsification of investigative records required to be accurately reported under federal law, including the Clery Act.

78. Plaintiff objected to or refused to participate in this unlawful conduct and/or took steps to ensure accurate reporting.

79. Vanderbilt University, through its agents, terminated Plaintiff's employment, and the decision to terminate was substantially motivated by her refusal to engage in illegal or unethical conduct and her efforts to uphold compliance with applicable law.

80. Vanderbilt's actions constitute retaliatory discharge in violation of Tennessee public policy.

81. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered loss of income and benefits, reputational harm, emotional distress, and other compensable injuries.

WHEREFORE, Plaintiff requests all relief allowed under Tennessee law, including but not limited to front pay, back pay, compensatory damages, punitive damages, attorney's fees, costs and such further relief as deemed proper by this Court.

## VI.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Grant a jury trial on all claims so triable;
2. Award back pay, front pay, and lost benefits;

3. Award compensatory and punitive damages;

4. Award pre- and post-judgment interest;

5. Award attorneys' fees and costs under applicable law; and

6. Grant all other relief the Court deems just and proper.

*/s/ Tess Heisserer*
Tess Heisserer (BPR No. 37345)
EmployLegal
611 Commerce Street, Suite 2611
Nashville, Tennessee 37203
Tele: (615) 401-8055
theisserer@forceforwork.com
www.forceforwork.com

*Counsel for Plaintiff*
